**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| WAYNE SPRATLEY, *on behalf of himself and all similarly situated individuals*, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 3:24-cv-772 <br> ) |
| TOP TIER SOLAR SOLUTIONS, LLC, | ) <br> ) |
| Defendant. | ) <br> ) |

**CLASS ACTION COMPLAINT**

Plaintiff Wayne Spratley, on behalf of himself and all other similarly situated individuals, files this Class Action Complaint against Defendant Top Tier Solar Solutions, LLC ("Top Tier" or "Defendant"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for actual, punitive, and statutory damages, costs, and attorneys' fees for Defendant's numerous violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, *et seq.*, Virginia Home Solicitation Sales Act ("VHSSA"), Va. Code § 59.1-21.1, *et seq.*, and common law fraud.

2.      Top Tier is a solar panel installation company that advertises its goods and services as "best-in-class" to consumers, while offering "the lowest financing options in the industry."[1]

3.      Based on this unqualified promises, Top Tier intentionally lures consumers like Mr. Spratley into signing decades-long financing arrangements for tens of thousands of dollars, all of which it claims pay for its "best-in-class" panel systems and the labor to install them.

---

[1] https://www.toptiersolarsolutions.com/why-top-tier.

4.    In reality, Top Tier knowingly employs unfair, deceptive, and oppressive sales tactics using door-to-door sales representatives to pressure consumers into signing decades-long financing arrangements without either (a) disclosing the consumers' right to cancel their agreements within the period prescribed by Virginia law or (b) representing the true cost to consumers of entering the financing arrangements.  It also incentivizes and trains its representatives to make multiple promises and representations to secure consumers' ascent to terms that result in tens of thousands in additional and hidden profits to Top Tier and its partners, with consumers left in the dark.

5.    Top Tier's claims about the quality of its products and services are also false, as Mr. Spratley was forced to discover when his roof was badly damaged by Top Tier's faulty installation—damage that Top Tier has now refused to repair.

6.    Faced with more than two decades of payments for a product that has both damaged his home and caused him and others to commit to thousands in hidden fees, Plaintiff brings this case on behalf of himself and others similarly situated for violations of the VCPA.  Plaintiff also asserts individual claims for violations of the VCPA, VHSSA, common law fraud, Magnuson-Moss Warranty Act, and declaratory relief.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over Plaintiff's Magnuson-Moss Warranty Act claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiff resides and entered into the contract with Top Tier.

2

**PARTIES**

9.      Plaintiff is a natural person residing in this Division and District.

10.     Defendant Top Tier Solar Solutions, LLC is a limited liability company organized under the laws of South Carolina with its principal place of business in North Carolina.

11.     Top Tier is a "supplier" under the VCPA because it is a "seller . . . who advertises, solicits, or engages in consumer transactions"—namely, the sale of solar panel installation services for use on consumer's primary residences.  Va. Code § 59.1-198.

**FACTS**

12.     Plaintiff is a resident of Richmond, Virginia.

13.     In July 2023, a Top Tier sales representative knocked on Plaintiff's door at his primary residence and told him about a promotion on solar panels that Top Tier was currently offering.

14.     Although Plaintiff told the representative that it was not a good time as his mother had just passed away two days prior, she insisted on speaking with him and entered his home.

15.     When Plaintiff expressed concerns about possible damage to his roof from the installation, the representative stated that Top Tier would repair any damage.

16.     After making several claims about Top Tier's "best-in-class" services, the representative prepared a quote and contract, which stated that the cost of the "base price" for the solar panel installation would be $68,277.31.  A true and correct copy of the quote and contract (the "Solar Agreement") is attached hereto as **Exhibit 1**.

17.     Top Tier then offered to finance the full amount over a 25-year loan at 4.49% interest, with a total monthly payment of $290.51.  *See* Ex. 1 at 6.

18.     Based on Top Tier's claims that the solar panel installation would save him money, as well as its representations regarding the financing and cost of the installation, Mr. Spratley

3

signed the Solar Agreement on July 12, 2023.  Ex. 1 at 11.  Mr. Spratley would not have agreed to the Solar Agreement but for Top Tier's representations.

19.     Unbeknownst to Mr. Spratley however, Top Tier made several misrepresentations to lure him into executing to the Solar Agreement.

20.     For example, although claiming that the "base price" of the solar panel's was $68,277.31, Top Tier intentionally omitted that this price in fact included a hidden charge that did not cover any costs associated with installing the solar panel system but was instead designed to provide a windfall to Top Tier and its financing partner, Goodleap.

21.     Indeed, had Mr. Spratley not used financing, the actual cost of the solar panel installation would have been tens of thousands of dollars lower—a fact that Top Tier never disclosed.

22.     For example, the average fair market cost of solar panel installation for the same-sized system that Mr. Spratley purchased is under $40,000 in Virginia, nearly $30,000 less than the amount charged by Top Tier here.[2]

23.     Instead of disclosing the actual cost of the solar panel system that Plaintiff purchased, Top Tier affirmatively misrepresented to Mr. Spratley that the $68,277.31 cost that he financed was solely to pay for the solar panel installation, when that was not the case.

24.     Making matters worse, the Top Tier sales agent also arranged a credit contract that imposed a 4.99% interest rate on this undisclosed charge, causing additional loss related to the amounts that it was concealing from Mr. Spratley and other consumers.

---

[2] https://www.ecowatch.com/solar/panel-cost/va.

25.    Top Tier's representations about repairing damage to Plaintiff's roof were also false. Although its representative claimed that Top Tier would repair any damage to his roof from the installation, Mr. Spratley soon discovered that this was not the case.

26.    Prior to Top Tier's installation work, Mr. Spratley had never had any issues with his roof. The very next day after Top Tier completed the installation, however, the roof began to leak when it rained.

27.    Mr. Spratley had an inspection of his roof to determine the cause of the leakage. Based on their inspection, a general contractor and two technicians with RVA Roofing Services found that "two solar panels, aluminum flashing [under the panels], and one vent boot were installed poorly, which has led to many leaks and damage to Mr. Spratley's roof and home." The professionals further concluded that "[t]he bases of two solar panels in question are leaking where they are screwed into the roof, which has caused extensive water damage to the boards under the shingles and leaks inside the home."

28.    The professionals determined that the resulting damage from Top Tier's faulty installation would require tearing up the shingles in the damaged area and replacing the damaged underboards and shingles; refitting a new vent boot; and refitting the solar panels with appropriate sealing around the bases.

29.    When Mr. Spratley contacted Top Tier about paying for the needed repairs to his roof, Top Tier reneged on its prior representations and promises about fixing the roof and instead stated that Mr. Spratley would have to pay for the repairs himself.

30.    After repeatedly attempting to address the issue with Top Tier, and to avoid further damage to his home, Mr. Spratley paid $9,000 for roof repairs, with additional repairs likely still needed.

31.     Mr. Spratley is not the only consumer to suffer from Top Tier's unfair and deceptive conduct.  As part of its business practices, Top Tier lures consumers into form contracts like the one signed by Mr. Spratley that include undisclosed financing charges, while representing that the total sale  amount is to pay for the solar panel systems that it installs.  Top Tier does this knowingly and intentionally, as it and its partners stand to make hundreds of thousands—if not millions—in additional profits from Plaintiff and the putative class members by getting them to agree to pay tens of thousands in additional fees under the false belief that those amounts represent the actual cost of providing the goods and services that Top Tier sells to consumers.

32.     Faced with Top Tier's unfair and deceptive trade practices, Mr. Spratley is forced to bring this lawsuit to seek relief for the harm to him and other similarly situated victims of Top Tier's deceptive conduct.

**COUNT ONE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiff)**

33.     Plaintiff incorporates each of the preceding allegations.

34.     Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which he is a putative class member:

> All persons in Virginia who: (1) executed an agreement with Top Tier for the installation of solar panel systems on their residence that (2) included in the "base price" of the solar panel installation a fee that was not applied to the costs of installing the solar panel systems on the resident's home.

35.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

36.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant misrepresented to Plaintiff and the putative class members that the base price of the solar panel systems was to pay for those systems; (2) whether Defendant omitted from its representations regarding the base price that it included an undisclosed finance charge; (3) whether the Defendant's violations were willful; and (3) the appropriate amount of damages for Defendant's violations.

37.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

38.     **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because his interests coincide with, and are not antagonistic to, the putative class members' interests. He has retained experienced and competent counsel; he intends to continue to prosecute this action vigorously; he and his counsel will fairly and adequately protect the interests of the members of the class; and he and his counsel have no interest that might cause them to not vigorously pursue this action.

39.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

40. Top Tier represented in its pro forma quotes and contracts with consumers that the "base price" of the solar panel systems included amounts that were not in fact applied to the installation and cost of the panels or their installation.

41. Instead, the base price included a hidden financing charge of tens of thousands of dollars that was designed to provide a windfall to Top Tier and its partners, and that Plaintiff and the class members would not have had to pay if they purchased the same goods and services a without financing.

42. Top Tier thus affirmatively misrepresented in each Plaintiff's and putative class member's lease agreement that the base price was in return for the solar panel installation, when in fact it was not. Top Tier also intentionally omitted the fact of the hidden finance charge from the agreements because it knew that consumers would not agree to pay tens of thousands of dollars more than the actual cost of the goods and services provided if they had known that such amounts were simply to provide a windfall to Top Tier and its partners.

43. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS*

*Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")).  The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200.  Va. Code § 59.1-199(5).  With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages.  *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.).  There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations.  *See id.*

44.    Here, Plaintiffs and the putative class members relied on the representation that they were paying the costs to Top Tier for the solar panel installation when they executed the contracts with Top Tier and agreed to pay and paid tens of thousands of dollars for what they assumed was the cost of the panel systems that Top Tier installed.

45.    Plaintiff and the putative class members have been damaged by Defendant's misrepresentations, including through payment of amounts that they believed were for the cost of installing the solar panel systems in their homes that in fact were not and were instead retained by Top Tier and its partners as profit.

46.    Top Tier has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, § 59.1-200(14).

47.    Top Tier's violations were willful.  Top Tier knew at the time it represented to consumers that the base price covered solely the cost of the panel installation that this was not the case, and it intentionally omitted the undisclosed additional charges so that it could obtain Plaintiff's and the class members' ascent to paying tens of thousands of dollars more for its own pecuniary gain.

48.    Plaintiff and the putative class members are thus entitled to damages for each month in which Top Tier charged and collected, or will charge and collect, amounts under the disputed contracts, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Top Tier's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if Top Tier's conduct was willful.  Va. Code § 59.1-204.

49.    Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

## COUNT TWO
### VIOLATION OF VCPA, Va. Code § 59.1-200, and VHSSA, Va. Code § 59.1-21.4
### (Individual Claim)

50.    Plaintiff incorporates each of the preceding allegations.

51.    Defendant violated Va. Code § 59.1-200(A)(19) by violating the provisions of the Virginia Home Solicitation Sales Act, Va. Code §§ 59.1-21.1, *et seq.*

52.    Under the VHSSA, a buyer has the right to "cancel a home solicitation sale until midnight the third business day after the day on which the buyer signs an agreement or offer to purchase which complies with § 59.1-21.4."  Va. Code § 591-21.3.

53.    A seller must provide notice of this right to cancellation "on the front side of the receipt or contract, or immediately above the buyer's signature, in bold face type or minimum size of ten points under the conspicuous caption: 'BUYER'S RIGHT TO CANCEL,'" and the notice must read as either of the following:

(i) If this agreement was solicited at a residence and you do not want the goods or services, you, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

Notice of Cancellation

_____

(Date of Transaction)

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to _____ (name of seller), at _____ (address of seller's place of business) not later than midnight of _____ (Date).

I hereby cancel this transaction.

_____

(Date)

_____

(Buyer's signature)"; or

(ii) In the form and content of any similar notice requirement for home solicitation sales under federal law; provided that such requirement contains at least the information required in (i) of this subsection and, further provided, that nothing in such notice is in conflict with the provisions of this chapter. Any statement or notice form presented to a buyer prior to the effective date of an amendment to this section shall be deemed sufficient if it satisfied the requirements of this section in effect at the time the statement or notice was presented.

Va. Code § 59.1-21.4(2).

54.    Unless and until "the seller has complied with this section the buyer may cancel the home solicitation sale by notifying the seller in any manner and by any means of his intention to cancel." *Id.* § 59.1-21.4(3)

55.    Top Tier's contract with Plaintiff constituted a "home solicitation sale" under the VHSSA because it involved the personal solicitation by a representative acting on behalf of Top Tier of the sale of goods or services at Plaintiff's residence without prior invitation or appointment,

and Plaintiff's agreement to purchase the goods or services offered by Top Tier's representative was given to the representative at his residence.  Va. Code § 59.1-21.2(A).

56.   Despite qualifying as a home solicitation sale under the VHSSA, Top Tier failed to provide a notice of cancellation in the manner and form prescribed under the Act, including because it failed to provide such notice on the front side of the contract or immediately above Plaintiff's signature in bold face, the appropriate font size, and with the required caption.  Top Tier instead buried the notice in an exhibit to the contract at the very end of a long list of terms and conditions.  *See* Ex. 1 at 15.

57.   As a result of Top Tier's failure to comply with the VHSSA, Plaintiff was not adequately informed of his right to cancel the contract and was forced to pay thousands to Top Tier when he had the right to cancel the contract.

58.   Top Tier's failure to comply with the VHSSA constitutes a violation of the VCPA, § 59.1-200(A)(19).

59.   Top Tier's violation was willful, as it intentionally avoided conspicuously notifying consumers of their right to cancel as part of its pattern and practice of oppressive, deceptive, and unfair sales techniques, which were designed to pressure vulnerable consumers like Plaintiff into signing agreements simply to get the sales representatives to leave their homes.  Top Tier is aware that its invasive practices that force representatives into consumer's homes increases sales, which would be undermined if consumers were informed of their right to cancel the agreements after the representatives have left and the consumers no longer felt pressured.

60.   Plaintiff is thus entitled (1) his actual damages or $500, whichever is greater, if Top Tier's conduct was not willful; or (2) three times his actual damages or $1,000, whichever is greater, if Top Tier's conduct was willful.  Va. Code § 59.1-204.

61.     Plaintiff is also entitled to his attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

<u>COUNT THREE</u><br>
<strong>VIOLATION OF VCPA, Va. Code § 59.1-200</strong><br>
<strong>(Individual Claim)</strong>

62.     Plaintiff incorporates each of the preceding allegations.

63.     Defendant violated Va. Code § 59.1-200(A)(6) by misrepresenting that its goods and services are of a particular standard, quality, grade, style, or model.

64.     Specifically, during the July 2023 visit of its sales representative to Plaintiff's home, Top Tier misrepresented that it would pay to repair any damage caused to Plaintiff's roof from the solar panel installation.

65.     This representation was false at the time Top Tier made it, as it knew at that time that as a policy, it does not pay for roof repairs and that it would not pay for Plaintiff's repairs.

66.     Plaintiff relied on Top Tier's representation in agreeing to the Solar Agreement.

67.     As a result of Top Tier's misrepresentations, Plaintiff has been forced to pay for the roof repairs himself, at significant cost to himself, and has also suffered emotional distress from the seeing his home continue to suffer significant water damage while Top Tier refused to respond.

68.     Top Tier's violation was willful, as its sales practices are intentionally designed to pressure consumers like Plaintiff into signing contracts for tens of thousands of dollars based on promises that it does not intend to keep.  Upon information and belief, Top Tier also incentivizes its sale representatives to get consumers to sign contracts by offering bonuses, promotions, and other benefits based on the number of contracts they are able to execute, which it knows will pressure the representatives to make whatever representations necessary to obtain a sale without regard to the consequences, including the deception of consumers like Plaintiff.

13

69.    Plaintiff is thus entitled (1) his actual damages or $500 per violation, whichever is greater, if Top Tier's conduct was not willful; or (2) three times his actual damages or $1,000 per violation, whichever is greater, if Top Tier's conduct was willful.  Va. Code § 59.1-204.

70.    Plaintiff is also entitled to his attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

### COUNT FOUR
### COMMON LAW FRAUD
**(Individual Claim)**

71.    Plaintiff incorporates each of the preceding allegations.

72.    Top Tier's representations regarding the purposes of the "base price" of the solar panel system and that Top Tier would repair any damage to Mr. Spratley's roof constituted material misrepresentations of present fact.

73.    At the time Top Tier made these misrepresentations, it knew that the base price included a hidden finance charge that did not cover any costs associated with the solar panel system or its installation but was simply an added fee for those who financed their purchase through Top Tier and its financing partners.

74.    Top Tier also knew at the time it represented that it would repair any damage to Plaintiff's roof that as a practice, it did not repair roofing damage.

75.    Alternatively, Top Tier's omission of the hidden fee constitutes a material omission of fact.

76.    Plaintiff relied on Top Tier's stated base price for the solar panel system and its representations regarding its agreement to repair of any roof damage in agreeing to the Solar Agreement.

77.    As a result of Plaintiff's reliance on Top Tier's material misrepresentations and omissions, Plaintiff suffered harm, including the payments to Top Tier under the Solar Agreement,

14

the cost of repairs to his roof from the damage caused by Top Tier's installers, and emotional distress, anger, frustration, and other harms.

78.     Top Tier knew or should have known that Mr. Spratley was relying on its representations, as the price of the solar system was a fundamental term of the contract between them and Mr. Spratley had specifically asked whether Top Tier would repair damage to his roof prior to signing the Agreement.

79.     Top Tier's conduct was intentional.  As a practice, Top Tier engages in unfair and deceptive sales tactics, including knowingly misrepresenting the actual cost of its solar panel systems, so that it can make tens of thousands in additional profit on each contract while keeping consumers in the dark.  Top Tier knows that if it disclosed the hidden fees in its contracts, it would lose out on this additional profit, so it intentionally conceals and mispresents their existence.  Top Tier also trains and incentivizes its sales representatives to make promises and representations that it cannot fulfill to obtain consumers' ascent to tens of thousands of dollars in financing that only partially covers the actual goods and services it offers, while providing a windfall to Top Tier.

80.     Plaintiff is thus entitled to recover his actual and punitive damages under Virginia law.

## COUNT FIVE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *et seq.*
### (Individual Claim)

81.     Plaintiff incorporates each of the preceding allegations.

82.     The solar panel system installed by Top Tier constitutes a "consumer product" under 15 U.S.C. § 2301(1), as it is tangible personal property distributed in commerce for personal, family, or household purposes.

83.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), as he is the buyer of the solar panel system sold by Top Tier.

15

84.    Top Tier is a "supplier" within the meaning of 15 U.S.C. § 2301(4), as it engages in the business of making the solar panel system sold to Plaintiff directly or indirectly available to him, as well as other consumers.

85.    Top Tier is a "warrantor" within the meaning of 15 U.S.C. § 2301(5) because it is a supplier who gave or offered to give a written warranty.  Specifically, the Solar Agreement included the following provision:

> 6. The client hereby agrees to indemnify, defend and hold harmless, Top Tier Solar Solutions, its parents, subsidiaries, affiliates, officers, employees, contractors and agents from any and all liability associated with this program/project except for the labor warranties provided.
>
> Please refer to product spec sheet and online warranty information for details. Manufacturer is responsible for all solar components warranties, Top Tier Solar Solutions is responsible for all labor warranties unless stipulated otherwise.
>
> - 25 year limited power output warranty on solar panels
> - 25 year limited product manufacturer's warranty on solar panels
> - 20 year limited warranty on racking system
> - 25 year workmanship warranty
> - 10 year roof penetration warranty

Ex. 1 at 12 ¶ 6.

86.    Despite providing a written warranty in the Solar Agreement, Top Tier failed to provide a full and conspicuous disclosure of the terms and conditions of its warranties prior to the sale of the solar panel system to him, as required by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302 and its enacting regulations, including because such warranties are not provided in an accessible digital format on Top Tier's website and because Top Tier did not provide a phone number or postal mailing address or other reasonable non-Internet based means of contacting Top Tier to obtain and review the warranty terms, as required by § 2302(b)(4).

87.    As of this filing and at the time Plaintiff entered the Solar Agreement, the warranties referenced in the Solar Agreement are not locatable under any tab of its website, let alone clearly and conspicuously provided.

88.     Had Top Tier provided a full and conspicuous disclosure of its warranty terms, including that it would not repair damage to Plaintiff's roof, Plaintiff would not have entered or made payments under the Solar Agreement and would not have been forced to pay for the resulting damage to his home.

89.     Top Tier's failure to comply with the provisions of the Magnuson-Moss Warranty Act constitute a violation of the Act under 15 U.S.C. § 2310(b), for which Plaintiff is entitled to his damages, costs, and attorneys' fees under § 2310(d), which exceed the sum or value of $25.

**COUNT SIX**
**DECLARATORY JUDGMENT, 28 U.S.C. § 2201**
**(Individual Claim)**

90.     Plaintiff incorporates each of the preceding allegations.

91.     As outlined above, under the VHSSA, Plaintiff is entitled to cancel his contract with Top Tier at any time because of Top Tier's failure to provide notice of cancellation in accordance with the Act.  Va. Code § 59.1-21.4(3)

92.     Pursuant to this provision, in May 2024, Plaintiff sent a notice of cancellation to Top Tier at the address provided for such notices in the governing contract stating that he was "writing to cancel [his] contract and all services with your company pursuant to the Virginia Home Solicitation Sales Act" and provided information on his contract and residence.  The letter also informed Top Tier that it could pick up its solar panels immediately and requested a refund of all amounts paid by him.

93.     Under Va. Code § 59.1-21.4(3), Plaintiff's notice of cancellation cancelled the contract between him and Top Tier as of the date of the notice.

94.     Plaintiff is thus entitled to a declaratory judgment that the contract between him and Top Tier is cancelled.

95.     The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this Court will determine the rights and interests of the parties to the Solar Agreement.

96.     Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ongoing attempted collection of amounts under the Solar Agreement.

97.     Accordingly, Plaintiff seeks a declaratory judgment that the Solar Agreement is cancelled.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendant; declaratory relief; his attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFF**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*